FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

01 MAR -1 PM 3: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

MELANIE M. CRIPPEN, as Personal )
Representative of the Estate of John )
Phillip Crippen, Deceased, )
                                    )
        Plaintiff, )        CV-00-PT-3366-M
                                    )
        vs. )
                                      )
M.E. "Mac" HOLCOMB, KEN )
LEWIS, RYAN JOHNSON, MARK )
HUGHES, JEFFREY VAUGHN,
CHRIS BROWN, and FRANK
MASON, in their individual capacities,

        Defendants.

## MEMORANDUM OPINION

This cause comes to be heard upon the collective defendants' Motion to Dismiss for

failure to state a claim upon which relief can be granted, filed on January 26, 2001.

## STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule

12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true.

United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All

factual allegations are to be construed in the light most favorable to the plaintiff. Brower v.

County of Inyo, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Usually, a

complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. *In re*

*Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996).

1

*19*

## THE COMPLAINT

**The parties**

The parties are all Alabama residents.  The plaintiff was the wife of the deceased John Phillip Crippen, and is currently serving as the personal representative for his estate.  Defendant M.E. "Mac" Holcomb ("defendant Holcomb") is the Sheriff of Marshall County.  Defendant Lieutenant Ken Lewis ("defendant Lewis") is the Chief Jailer of the Marshall County Jail.  Defendant Captain Chris Brown ("defendant Brown") is the warden of the Marshall County Jail.  The remainder of the defendants, ("defendant Johnson," "defendant Hughes," "defendant Vaughn," and "defendant Mason") are all jailers of the Marshall County Jail.  This action is brought against the defendants only in their individual capacities.[1]

**The allegations**

The allegations in the complaint claim that on or about February 3, 2000, the plaintiff's decedent began serving a 30-day misdemeanor sentence in the Marshall County Jail.  It alleges that at the time that the plaintiff was taken into custody, both the plaintiff and the plaintiff's decedent notified the jailers that the decedent was an alcoholic and experienced physical complications from alcohol withdrawal, as well as delirium tremens ("DT's").

The complaint claims that during the decedent's time of incarceration, he suffered from severe alcohol withdrawal "and/or DT's."  According to the complaint, in spite of the prior warnings, as well as the seriousness of his present medical condition, the defendants did not

---

[1]  There appeared to be some confusion between the parties as to whether the plaintiff was suing the defendants in only their individual capacities, or in both their individual and official capacities.  In the "Plaintiff's Opposition Brief to Defendant's Motion to Dismiss," the plaintiff clarifies the issue, stating that at this time she does not seek to state a claim against the defendants in their official capacities.  Because the plaintiff has specifically disclaimed any assertions of official capacity liability, this court will not, at this time, address further arguments with regard to the merits of an action against the defendants in their official capacities.

2

provide the plaintiff with "proper medical care."  In fact, the plaintiff alleges, the defendants, in

addition to displaying "deliberate indifference to [the decedent's] serious medical need,"

affirmatively "denied proper nutrition, hydration, shelter, clothing, and sanitation," and subjected

the decedent to "physical mistreatment and physical abuse."  The complaint claims that the

defendants used excessive force against the plaintiff, who  "was physically assaulted and

battered by his jailers . . . maliciously and sadistically for the very purpose of causing harm."  It

asserts that every defendant was either aware of the alleged "unconstitutional conditions" and

"acquiesced" to them, or "personally participated" in the alleged acts.  The complaint also

specifically claims that the defendants' acts and omissions "were committed under color of state

law and violate clearly established constitutional rights of which they knew or should have

known."

### The counts

Count One, brought pursuant to 42 U.S.C. § 1983, alleges that, through "deliberate

indifference to serious medical needs," the defendants violated the decedent's Eighth and

Fourteenth Amendment right to be free from cruel and unusual punishment.  The plaintiff claims

that, as a result of the defendants' deliberate indifference to the decedent's alcohol "withdrawals

and/or DT's including, but not limited to tremors and hallucinations," as well as the other acts

and deprivations alleged in the complaint, the plaintiff's decedent died on February 10, 2000, a

week after he had begun serving his 30-day sentence.  Count One alleges that each defendant

was aware of the plaintiff's alleged medical condition and the conditions of his incarceration,

and either acquiesced to them or personally participated in them.

Count Two, "Excessive force," is also brought pursuant to § 1983 and the Eighth and

Fourteenth Amendment rights to be free from cruel and unusual punishment.  In Count Two, the

plaintiff claims that the alleged assaults and batteries, performed "maliciously and sadistically for the very purpose of causing harm," constituted a use of excessive force that "combined and contributed to [the decedent's] ultimate death." This particular count, however, specifically implicates only defendants Johnson, Hughes, and Vaughn.

Count Three is a state law claim, "Willful Failure to Provide Reasonable Medical Care." It alleges that, while the decedent was incarcerated in the Marshall County Jail, the defendants "willfully and/or maliciously" failed to provide him with reasonable medical care when he suffered from the alleged severe alcohol-related withdrawals and/or DT's.

Count Four is a state law claim for "Assault and Battery." Again, it is brought specifically against only defendants Johnson, Hughes, and Vaughn. It alleges that while the decedent was incarcerated, these three defendants "consciously and deliberately brought about harmful and injurious contact with [the decedent's] person . . . while acting within the line and scope of their employment." Count Four claims that the three defendants behaved "wilfully and maliciously" in committing these alleged acts, which "combined and contributed to [the decedent's] ultimate death.

## ARGUMENT AND DISCUSSION

The defendants, collectively, argue that the plaintiff has failed to state a claim against any one of them upon which relief may be granted.

### The Federal claims

### Qualified Immunity and the Heightened Pleading Standard

The defendants first argue that, with respect to the § 1983 claims, they are all entitled to

4

qualified immunity.[2] Public officials, including correctional officers, are protected from actions brought against them in their individual capacities by qualified immunity if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(en banc). Unless the conduct that forms the basis for the suit violates clearly established federal constitutional rights of which a reasonable person would have known *at the time that the alleged actions took place*, the official will be protected not only from liability, but also from the lawsuit itself. Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999). "For a right to be clearly established, previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate the law." Id., citing Anderson v. Creighton, 482 U.S. 635, 640, 107 S. Ct. 30304 (1987); GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998). The defendants argue that, between February 3, 2000 and February 10, 2000, the law was not sufficiently clearly established to give the defendants notice that their actions violated it.

The defendants also argue that the plaintiff's complaint does not comport with the Eleventh Circuit's heightened pleading standard for § 1983 claims. They cite Oladeinde v. City of Birmingham, 963 F.2d 1418, 1485 (11th Cir. 1992) for the proposition that "[i]n pleading a § 1983 action, some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the wrongful acts occurred." The defendants contend that the plaintiff's complaint fails "to allege with any degree of particularity

---

[2] The defendants also appear to argue that they deserve Eleventh Amendment immunity for the claims brought against them in their individual capacities. Eleventh Amendment immunity, which bars claims against states and state officials sued in their official capacities, when the state has not consented to be sued, does not prevent suits against state officials sued in their individual capacities under § 1983. Cross v. State of Alabama, 49 F.3d 1490, 1503 (11th Cir. 1995).

or specificity the acts or omissions of [d]efendants that allegedly violated the constitutional rights of the plaintiff's decedent . . . ." The defendants additionally note that the plaintiff failed to allege that defendant Holcomb participated personally in the alleged constitutional violations.

Qualified Immunity: deliberate indifference to serious medical needs

The plaintiff argues that the defendants do not deserve qualified immunity. She relies on Lancaster v. Monroe County, 116 F.3d 1419, 1426 (11th Cir. 1997), in which the Eleventh Circuit held that it is "clearly established that sheriffs and jailers cannot place or keep a chronic alcoholic in jail without any medical supervision, when the defendants are aware that the alcoholic is suffering from a severe form of alcohol withdrawal." The complaint alleges that the decedent was a chronic alcoholic. The complaint alleges that the defendants were warned that he would suffer from severe alcohol withdrawal, and that the decedent eventually did go into chronic alcohol withdrawal and DT's. The complaint does not, however, allege the specific circumstances during which, and through which, the defendants denied the plaintiff medical attention. For instance, the complaint does not specify the defendants' response to the decedent's alleged DT's, hallucinations, and tremors. It does not state whether the defendants simply ignored the plaintiff's medical symptoms, or whether they provided some medical care that they knew or should have known would be inadequate. The complaint is more descriptive of the allegedly squalid living conditions in the Marshall County Jail than the defendants' acts or omissions in response to the decedent's serious medical need. It is difficult to discern whether, in the factual scenario that the complaint provides, the defendants acted in a way that the plaintiff claims was inadequate, or if they failed to act at all. In Lancaster, the defendants obviously failed to provide the detainee with any medical assistance until the detainee's condition had deteriorated into a medical emergency. Id. at 1425-1426.

6

In response to the defendants' assertion that defendant Holcomb did not participate personally in the alleged constitutional violations, the plaintiff correctly argues that affirmative personal participation is not necessary in a deliberate indifference context. It is sufficient, for purposes of deliberate indifference, that the plaintiff allege that defendant Holcomb knew of the plaintiff's serious medical condition and that his actions or omissions in disregard of this knowledge rose above mere negligence. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994); see also Morrison v. Washington County, 700 F.2d 678, 686 (11th Cir. 1983). The complaint alleges that the decedent's medical condition "was visible and obvious to the other inmates, the jailers, and the medical personnel at the jail. Despite this fact, [decedent] was denied proper medical attention." Complaint, p. 4, para. 25. In the next paragraph, the complaint alleges that "Defendant Holcomb was aware of, acquiesced in, and/or participated in the unconstitutional restrictions and conditions of [decedent's] confinement at the jail as set forth above, and failed to take necessary and appropriate action."

Qualified Immunity: excessive force

The court notes that the plaintiff did not address the defendants' assertion of qualified immunity in the context of her § 1983 excessive force claim. The concepts of deliberate indifference and excessive force are viewed by the Supreme Court and the Eleventh Circuit as two separate inquiries with different standards. See Hudson v. McMillian, 503 U.S. 1, 5-9 (1992); Williams v. Burton, 943 F.2d 1572, 1576-1577 (11th Cir. 1991). Therefore, the plaintiff cannot rely upon a finding that the law of deliberate indifference is clearly established in order to claim that the law of excessive force is clearly established as well. The court also notes that, while the complaint alleges that three of the defendants severely beat the plaintiff's decedent on several occasions, and that those beatings contributed to his death, it does not allege the

7

circumstances surrounding those beatings.  For example, the complaint does not specify whether the beatings occurred while the decedent was sitting peacefully in his cell, while he was resisting authority, or while he was threatening to harm himself or another inmate.  As discussed, *infra*, the complaint does not clearly state the kinds of physical acts that constituted the alleged abuse; for example, punching, kicking, throwing, or choking.  However, accepting, as this court must for purposes of this motion, that three of the defendants severely beat the plaintiff several times during his week of incarceration, the court will now look at Eleventh Circuit and Supreme Court discussions of excessive force.

In Hudson, the evidence showed that, after the prisoner had argued with one of the prison guards, three guards removed the plaintiff from his cell, placed him in handcuffs and shackles, and forced him to walk with them toward the "administrative lockdown" area.  503 U.S. at 4.  While they were walking toward the lockdown area, the guard in front "punched [the prisoner] in the mouth, eyes, chest, and stomach" while the guard behind prevented the prisoner from evading the blows and "kicked and punched him from behind."  Id.  Although the prison supervisor on duty observed the beating, he did nothing to intervene, but simply admonished the guards "not to have too much fun."  Id.  The Fifth Circuit held that [t]he conduct of [the defendants] clearly amounted to the excessive, unnecessary, and wanton infliction of pain, but reversed the magistrate judge's award of damages because the prisoner's injuries were "minor."  Id.  In reversing the Fifth Circuit's denial of damages, the Supreme Court found that "the blows directed at [the prisoner], which caused bruises, swelling, loosened teeth, and cracked a dental plate, are not *de minimis* for Eighth Amendment purposes."  Id. at 10.

In so finding, the high Court expounded upon the extent to which a prison guard may use physical force against a prisoner:

"Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates. . . . We hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

Id. at 6-7 (citing Whitley v. Albers, 475 U.S. 312, 321-322 (1986)).  Within that inquiry, courts are to evaluate whether the use of force could plausibly have been thought necessary, by examining the need to apply force, the relationship between the need to apply force and the force actually applied, the threat as reasonably perceived by the officers, and any attempts made to temper the severity of a forceful response to that threat.  Id. at 7.

In Ort v. White, 813 F.2d 318 (11th Cir. 1987), the Eleventh Circuit discussed the difference between force applied to maintain or restore discipline and force applied to punish a prisoner for wrongful behavior.  According to the Ort court, "[p]unishment in the strict sense involves a penalty which is deliberately administered after reflection and evaluation in response to conduct occurring in the past.  This strict form of punishment usually is administered to chastise the wrongdoer and to deter him and others from engaging in such unacceptable conduct in the future. . . . [it] is not designed to bring an ongoing violation to a halt."  Id. (emphasis added).  With regard to immediate coercive measures, the court explained that "[d]ifferent considerations apply, however, to an immediate coercive measure undertaken by a prison official, necessitated by a spontaneous violation of a prison rule or regulation. . . . Faced with such sudden wrongful and quite possible harmful conduct, the prison official on the scene does not have the luxury of hindsight and reflection."  Id.  The Eleventh Circuit found that conduct that may be constitutionally permissible in the context of halting a violation of prison rules, could be constitutionally impermissible as punishment.  Id. at 323.

9

Less than a year before <u>Hudson</u>, the Eleventh Circuit decided <u>Williams v. Burton</u>, 943
F.2d 1572, 1576 (11th Cir. 1991).  In <u>Williams</u>, the prisoner brought an action against several
prison guards who, after quelling a physical altercation between the prisoner and some guards
that led to a small prison riot, gagged him and placed him in a "four points" restraint for over
twenty-four hours.  <u>Id.</u> at 1574.  As part of its excessive force analysis, the Eleventh Circuit
stated that "once the necessity for the application of force ceases, <u>any continued use of harmful</u>
<u>force</u> can be a violation of the Eighth and Fourteenth Amendments, and <u>any abuse</u> directed at the
prisoner after he terminates his resistance to authority is an Eighth Amendment violation."  <u>Id.</u> at
1576 (emphasis added).  This holding may be seen as building upon <u>Ort</u>'s principles of
punishment and response.  Reasonable physical force applied in a response to a prisoner's threats
or disobedience would fall into the category of constitutionally permissible coercive force; the
same physical force applied after the prisoner was subdued and was no longer posing a safety
threat would fall into constitutionally impermissible punitive force.  The necessity of harmful
physical force would be apparent in the former case, but not in the latter.  <u>See</u> <u>Williams</u>, 943
F.2d at 1576.

The distinction between a constitutional coercive response to disobedience or threat and
an unconstitutional, unnecessary punishment is reinforced in later Eleventh Circuit cases.  In
<u>Slicker v. Jackson</u>, an arrestee brought a section 1983 action against a police officer who
allegedly had used excessive force when arresting him.  <u>Id.</u> at 1227.  The evidence showed that,
after the officers had already arrested and handcuffed the arrestee, who was not struggling or
resisting them in any way, they "kicked him in the ribs and beat his head on the ground . . . . and
knocked him unconscious."  <u>Id.</u> at 1233.  In affirming the district court's denial of qualified
immunity, the Eleventh Circuit stated that "this evidence suggests that the officers used

10

excessive force in beating [the arrestee] <u>even though he was handcuffed and did not resist,</u> <u>attempt to flee, or struggle with the officers in any way</u>.  This evidential foundation is sufficient to raise a question of fact as to whether the officers' actions constituted excessive . . . force." <u>Id.</u> (emphasis added).  Although the context of the suit was that of an arrestee suing an arresting police officer instead of a convicted criminal suing his jailers, the principle that harmful physical force is likely excessive when applied in the absence of threat, resistence, or disobedience,  is nonetheless evident in the court's opinion.

In <u>Hope v. Pelzer</u>, ___ F.3d ___, 2001 WL 91360 (11th Cir. 2001), the Eleventh Circuit held that the behavior of the defendant prison guards in handcuffing the prisoner to a "hitching post," a restraint historically used for prison discipline, but which the Department of Justice had recently labeled an "improper corporal punishment," had violated the prisoner's Eighth Amendment rights.  <u>Id.</u> at *5.  The court found that, at the time the plaintiff was handcuffed to the post, "he was the victim in an altercation on the work site, but he never refused to do his job. . . . [t]here is nothing in the record . . . claiming that he refused to work or encouraged other inmates to refuse to work."  <u>Id.</u> at *3.  Relying on <u>Williams</u>, the court concluded that "the policy and practice of cuffing an inmate to a hitching post or similar stationary object for a period of time that surpasses that necessary to quell a threat or restore order is a violation of the Eighth Amendment.  It is our intention that this holding serve as a bright-line rule for any future case involving the use of a hitching post by prison authorities."  <u>Id.</u> at *5.  The court granted the prison guards qualified immunity, however, because it found that, even though the prisoners' actions violated the Eighth Amendment, the law regarding use of passive restraints such as hitching posts had not been clearly established at the time that the unconstitutional action occurred.  <u>Id.</u> at *4-*5.

The court's grant of qualified immunity to the guards in <u>Hope</u> is likely inapplicable to the case at hand, however.  <u>Hope</u> involved the use of passive restraints such as hitching posts; the facts of the instant case allege positive, abusive physical force of the kind addressed in <u>Slicker</u> and discussed in <u>Williams</u>.  While the objective reasonableness of the use of passive restraint on a prisoner that has already been subdued may be a debatable issue, after <u>Hudson</u>, <u>Ort</u>, <u>Williams</u>, and <u>Slicker</u>, the use harmful physical force when an inmate is compliant with authority and poses no threat to prison discipline or safety may be seen as "clearly" unconstitutional.  The words "clearly established" should not be talismanic.  After the Eleventh Circuit's holding in <u>Williams</u>, in 1991, that "once the necessity for the application of force ceases, <u>any continued use of harmful force</u> can be a violation of the Eighth and Fourteenth Amendments, and <u>any abuse</u> directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation," <u>Id.</u> at 1576 (emphasis added), a reasonable jailer in 2000, who beats a compliant or subdued prisoner, either to punish past wrongdoing, or for no reason at all, should know that his actions violate the law.  In the instant case, however, the circumstances surrounding the alleged "severe beatings" are unknown to this court.

**The heightened pleading requirement**

In response to the defendants' argument that the plaintiff's claim fails to meet the Eleventh Circuit's "heightened pleading requirement" for section 1983 cases, the plaintiff argues that heightened pleading standards were specifically invalidated by the Supreme Court in <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993).  The plaintiff asserts that all of the Eleventh Circuit cases that the defendant cites in support of a heightened pleading requirement precede <u>Leatherman</u>, and, therefore, are not good law, at least for the proposition that a heightened pleading requirement still exists.  The plaintiff argues, in

12

the alternative, that the allegations of the complaint have been sufficiently pled to put the defendants on notice of the allegations of wrongful acts and of the legal claims against them.

The plaintiff's arguments regarding the implications of <u>Leatherman</u> are based upon an over-simplification of the holding in that case.  The <u>Leatherman</u> Court clearly stated that its holding governed only section 1983 suits against municipalities.  <u>Id.</u> at 165 (" . . . we granted certiorari to resolve a conflict among the Courts of Appeals concerning the applicability of a heightened pleading standard to § 1983 actions <u>alleging municipal liability</u>."(emphasis added)(internal citation omitted)).  The Court specifically examined the heightened pleading standard, which, it acknowledged, was applied by some courts "'[i]n cases against government officials involving the likely defense of immunity . . . ,'" in the context of the Fifth Circuit's recent extension of its application to municipal liability claims.  <u>Id.</u> at 167 (quoting <u>Elliott v. Perez</u>, 751 F.2d 1472 (5th Cir. 1985).  While the Court held that "it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit <u>in this case</u> with the liberal system of 'notice pleading' set up by the Federal Rules," it also deliberately narrowed its holding by stating that "[w]e have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials."  <u>Id.</u> (emphasis added).  Because the Supreme Court's own language in <u>Leatherman</u> limited its holding to cases involving municipal liability, and because the plaintiff has specifically limited her complaint to state claims against only individual defendants, <u>Leatherman</u> does not provide the rule of this case.

The Eleventh Circuit recognized the restricted scope of the <u>Leatherman</u> holding in <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1368 (11th Cir. 1998).  In <u>GJR</u>, the plaintiff sued some of the numerous defendants, municipal officials, in their individual capacities

13

under § 1983. Id. at 1364. The court found that the complaint, which alleged four causes of action against several individual defendants and a municipality, was a "shotgun complaint," and that "application of the heightened pleading standard is one way to deal summarily with pleadings of this kind." Id. at 1368. The court noted that "[a]lthough the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities, the Court specifically declined to extend its holding to cases involving individual government officials, and we likewise decline to do so here." Id. (citing Leatherman, 507 U.S. at 167-168). The GJR court clearly stated that "the heightened pleading requirement is the law of this circuit." Id.

The analysis does not end here, however. The Eleventh Circuit's description of the GJR plaintiff's "shotgun complaint," for which it prescribed application of the heightened pleading standard, details a complaint that "presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional 'rights.'" Id. The court's list of the complaint's shortcomings included unclear factual outlines of the claims, unclear allegations of the constitutional rights that the plaintiff claimed had been violated, and lack of identification of the Constitutional provisions that supposedly supported the rights asserted. Id. Compared to this description of the GJR plaintiff's complaint, the plaintiff's complaint in the instant case is a model of clarity. Counts One and Three allege that all of the defendants were aware of the plaintiff's decedent's serious medical condition, and either failed to take action to remedy the situation, or actively exacerbated the problem. Counts Two and Four are specifically limited only to three of the defendants, and allege physical assault and battery. All four counts clearly invoke the plaintiff's decedent's Eighth Amendment right

14

against cruel and unusual punishment.

The complaint in the instant may be more like the complaint that the Eleventh Circuit evaluated in <u>Kyle v. Chapman</u>, 208 F.3d 940 (11th Cir. 2000). In concluding that the plaintiffs' complaint against the defendants in their individual capacities did not run afoul of the heightened pleading requirement, the court stated that:

> "In this case, plaintiffs have identified the defendants who were personally involved in the care of [plaintiff's minor son] and in the alleged acts upon which the alleged constitutional violation is based. The complaint alleges with sufficient particularity facts establishing a causal connection between defendants' actions and the alleged constitutional violation for purposes of overcoming defendants' qualified immunity. More specificity can be developed as the case proceeds."

Although this complaint is not as detailed as the <u>Kyle</u> complaint, with regard to the specific forms of physical abuse allegedly dealt to the plaintiff by the three jailers, or with regard to the specific manner in which the defendants allegedly denied the plaintiff "reasonable medical care," neither is it the sea of irrelevant factual allegations and vague constitutional rights described in <u>GJR</u>.[3]

**The State claims**

With regard to the plaintiff's state law claims, the defendants argue that they are all entitled to sovereign immunity, as afforded to executive officers and agents of the State of Alabama, pursuant to Article I, section 14 of the Alabama Constitution of 1901. The plaintiff, citing <u>Cranman v. Maxwell</u>, __ So. 2d __, 2000 WL 1728367 (Ala. November 22, 2000), argues that the defendants' sovereign immunity from suit is limited to cases in which allegations of bad

---

[3] The <u>Kyle</u> complaint specifically listed the forms of physical abuse that the plaintiff allegedly suffered, including, "punitively locking Kyle in closets, hitting, pushing, withholding food, forcing cold showers . . . ." 208 F.3d 940 at 944.

faith and malicious and willful actions are not involved. In <u>Cranman</u>, the Alabama Supreme

Court restated the rules for sovereign immunity, thereby limiting that immunity to State agents

who did not act "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or

under a mistaken interpretation of the law." <u>Id.</u> at *11-12. The plaintiff points to her complaint,

in which allegations of willful and malicious behavior abound, and argues that these allegations

remove the defendants from the protection of constitutional sovereign immunity. The plaintiff

also argues that the defendants are not entitled to discretionary function immunity because they

have not presented evidence, as required by Alabama law, to prove that they enjoy discretionary

immunity, citing <u>Davis v. Pinkney</u>, 721 So. 2d 685, 689 (1998).

     The gradual erosion of the doctrine of sovereign immunity for state officials has been

chronicled at length by the Alabama Supreme Court on several occasions. The <u>Cranman</u> opinion

provides a thorough discussion of the ongoing saga; therefore this court will not reinvent the

wheel. In a footnote to <u>Cranman</u>, the court stated that: "We do not deal here with the absolute

immunity of witnesses, judges, prosecutors, and legislators, nor do we overrule <u>*Ex parte* Purvis</u> .

. . ." 2000 WL 1728367, * 23 n. 2.

     In <u>*Ex parte* Purvis</u>, 689 So. 2d 794, 795 (Ala. 1996), the plaintiff sued both a sheriff and

a sheriff's deputy for injuries that she had received from a fugitive that they had failed to

apprehend. 689 So. 2d at 795. The court, finding that the defendants had acted in the scope of

their employment, concluded that they were immune from suit pursuant to Article I, Section 14

of the Alabama Constitution. <u>Id.</u> at 795. The court recognized the exception to Section 14

immunity for willful, malicious, or bad faith conduct, articulated in <u>Spring Hill Lighting &</u>

<u>Supply Co. v. Square D Co.</u>, 662 So. 2d 1141, 1148 (Ala. 1995), but concluded that the

exceptions to immunity did not apply to the defendants. <u>Id.</u> "In the first place, <u>Spring Hill</u>

16

Lighting did not deal with claims against a sheriff and a deputy sheriff or other constitutional officer, but instead dealt with . . . state employees in the State Docks Department. . . ." Id. at 795-796. Although the court acknowledged that the plaintiff in Purvis had alleged that the defendants had intentionally failed to follow proper procedure, it nonetheless found that they were entitled to immunity. Id.

In reaching its decision, the Purvis court relied in large part upon Karrick v. Johnson, 659 So. 2d 77 (Ala. 1995). 689 So. 2d at 796. In Karrick, the Alabama Supreme Court granted qualified immunity to a sheriff who had been sued for money damages for false imprisonment and malicious prosecution. 659 So. 2d at 79. In its opinion, the Karrick court articulated the limited exceptions to a sheriff's sovereign immunity. The court, quoting its prior opinion in Alexander v. Hatfield, 652 So. 2d 1142, 1144 (Ala. 1994), stated that

> "Under Article I, § 14, of the Alabama Constitution of 1901, the only exceptions
> to the sovereign immunity of sheriffs are actions brought: (1) to compel him to
> perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin
> him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad
> faith, fraudulently, beyond his authority, or under mistaken interpretation of the
> law, or (5) to seek construction of a statute under the Declaratory Judgment Act . .
> . ."

Sheriff's deputies enjoy the same level of immunity that sheriffs possess. 659 So. 2d at 79 (internal quotations and citations omitted). The Alexander case itself is notable because it involved a suit against a deputy sheriff in both her individual and official capacities for, among other things, bad faith service of process. 652 So. 2d at 1142. Despite the allegations of bad faith, the court, finding that the deputy had made the challenged actions while "on duty," upheld the lower court's grant of summary judgment to the defendant based on Section 14 sovereign immunity. Id. at 1144.

The message of the preceding cases is that Alabama law has placed a protective shield

over the constitutional offices of sheriffs and their deputies acting in the line of duty, limiting the

exceptions to the otherwise airtight doctrine of sovereign immunity to those listed in <u>Alexander</u>

and <u>Karrick</u>. The <u>Purvis</u> opinion explicitly relied upon the limited-exception principle to grant

the defendants sovereign immunity. 689 So. 2d at 796. <u>Cranman</u> placed the final brick in this

shield by explicitly preserving <u>Purvis</u>. 2000 WL 1728367 at *23 n. 2. Because this action

involves none of the <u>Alexander</u> and <u>Karrick</u> exceptions to the defendants' sovereign immunity,

the plaintiff's state law claim against defendant Holcomb, at least, is barred.

    This decision finds support in current Eleventh Circuit case law, most notably in <u>Tinney</u>

<u>v. Shores</u>, 77 F.3d 378 (11th Cir. 1996), in which the court construed Alabama law to grant the

constitutional offices of sheriff and sheriff's deputy absolute sovereign immunity from actions

seeking a remedy other than injunctive relief. It also comports with <u>McMillian v. W.E. Johnson</u>,

101 F.3d 1363, 1365 (11th Cir. 1996), decided shortly after <u>Tinney</u>, in which the court stated

"the holding of the case is clear: under Alabama law, a claim against an Alabama sheriff in his

individual capacity is barred by the doctrine of sovereign immunity." Although both cases

precede <u>Cranman</u> and <u>Purvis</u>, they acknowledge the status of these constitutional offices under

Alabama law. This court does not find that status to have changed.

    The above analysis applies clearly to only one defendant in this case, however.

Defendant Sheriff Holcomb is clearly entitled to sovereign immunity from the plaintiff's state

law claims. The remainder of the defendants are not sheriff's deputies, but are jailers. The cases

upon which the defendants rely to argue that the defendant jailers are also entitled to the sheriff's

immunity, without exception, address the immunity of deputies. The determination of whether

the defendant jailers are entitled to immunity in this case, as well as the determination of the

kind of immunity to which they are entitled, involves an examination of the relationship between

sheriffs and their staff under Alabama law.

Not all state officers and employees are created equal in Alabama. Sheriffs are "constitutional" officers of the State of Alabama, as are judges, legislators, and prosecutors. Purvis, 689 So. 2d at 795-796; Cranman, 2000 WL 1728367, * 23 n. 2. As members of this distinguished group, sheriffs enjoy almost absolute immunity from suits against them for actions that they take within the line of duty, subject only to the limited Alexander and Karrick exceptions. Purvis, 689 So. 2d at 796. According to the Alabama Supreme Court in Parker v. Amerson, 519 So. 2d 442, 446 (Ala. 1987), "[t]his Court has specifically held that a suit against a sheriff is 'essentially a suit against the state' and thus 'not maintainable.'" (quoting Montiel v. Holcombe, 240 Ala. 352, 199 So. 245 (1940)).

Sheriffs and their deputies have a very close relationship under Alabama law. Courts have described Alabama deputy sheriffs as "legal extensions" of the sheriff, and "alter egos" of the sheriff. See Wright v. Bailey, 611 So. 2d 300, 303 (Ala. 1992); White v. Birchfield, 582 So. 2d 1085 (Ala. 1991); Hereford v. Jefferson County, 586 So. 2d 209 (Ala. 1991).   Carr v. City of Florence, 916 F.2d 1521, 1526 (11th Cir. 1990); Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989)("Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff."). According to the Alabama Supreme Court, "the acts of the deputy sheriff are the acts of the sheriff." Hereford, 586 So. 2d at 210 (quoting Mosley v. Kennedy, 17 So. 2d 536, 537 (Ala. 1944)). The Eleventh Circuit, in Carr and Lancaster, reasoned that the sheriffs and deputies were considered to be legally synonymous because, as the sheriff's agents, deputies can perform any act within the sheriff's authority. 916 F.2d at 1526; 116 F.3d at 1429-1430. Therefore, "[i]f the deputy's acts are generally considered the acts of the sheriff, it is logical that those acts should enjoy the same immunity covering the sheriff's own

acts." <u>Wright</u>, 611 So. 2d at 303.

The conclusion that jailers enjoy the same immunity as sheriff's deputies is not quite as

inexorable.  The Alabama Supreme Court has stated that the jailer is the employee and agent of

the sheriff.  <u>Stinson v. City of Elba</u>, 601 So. 2d 66 (Ala. 1992).  The sheriff hires the jailer as part

of his official duties.  <u>White v. Birchfield</u>, 582 So. 2d 1085, 1088 (Ala. 1991).  A sheriff cannot

be held liable under a theory of respondeat superior for the acts of his jailer; <u>Parker</u>, 519 So. 2d

442 at 446, <u>White</u>, 582 So. 2d at 1088.[4]  In <u>Lancaster</u>, the Eleventh Circuit considered the issue

of whether jailers are entitled to the same sovereign immunity protection from state law claims

as sheriffs and their deputies.  116 F.3d at 1431.  The court discussed the nature of the

relationship between sheriffs and jailers, and compared it to that of sheriffs and deputies.  <u>Id.</u> at

1429.  According to the <u>Lancaster</u> court,

> "[U]nder Alabama law, jailers carry out the sheriff's duty to maintain 'legal
> custody and charge of the jail in his county and all prisoners committed thereto.'
> Although jailers may not function as an 'extension' of the sheriff to the same
> degree that deputies do, because a jailer cannot undertake every act that the
> sheriff could perform, nevertheless, jailers are responsible to the sheriff for their
> performance of state mandated duties.  Sheriffs and jailers have a close working
> relationship under Alabama law."

<u>Id.</u> (internal citations omitted).  The court proceeded to find that the differences in the

---

[4] This particular aspect of governmental agency law arises from Alabama's legal axiom that a suit against a sheriff is essentially a suit against the state.  To hold the sheriff liable for official acts outside the scope of the <u>Karrik</u> exceptions, under any theory of recovery, would violate section 14 of the Alabama constitution.  <u>See</u> <u>White</u>, 582 So. 2d at 1087-1088; <u>Parker</u>, 519 So. 2d at 446.  Thus, the sheriff cannot be held liable under a theory of respondeat superior even for the acts of his deputies, which, as this court has observed, enjoy an exceedingly close legal relationship to his office.  According to the Alabama Supreme Court in <u>White</u>, "a claim of respondeat superior does not fit into any of these special exceptions to the absolute immunity afforded to state officials when the action is, in essence, one against the state. [Plaintiff's] claim against [the sheriff], based not upon the sheriff's actions as an individual, but upon his official position as "employer" of [the deputy], is, in essence, a claim against the state; therefore, that claim is barred by . . . absolute immunity . . . ."  582 So. 2d at 1088.  In <u>Parker</u>, the court noted that, in a few prior cases in the early 1900's, it had either held or assumed that a sheriff could be civilly liable for the official acts of his deputies.  519 So. 2d at n. 2.  The court proceeded to distinguish those cases on the grounds that some of them did not analyze the sheriff's status in light of section 14 of the Constitution, while others simply focused on the narrow issues before the court and did not address the sheriff's status at all.  <u>Id.</u>

sheriff/jailer relationship and the sheriff/deputy relationship were not so great that jailers could be denied absolute sovereign immunity for official capacity claims against them.[5] Id.

Next, the court considered the individual capacity claims against the jailers. The court began by noting that, under Alabama law, most individual capacity suits against sheriffs were treated as "suits against the state, and, as such, were barred by the doctrine of sovereign immunity." Id. at 1430-1431. The court then noted that the sheriffs' sovereign immunity had been extended to deputy sheriffs as well. Id. at 1431. Finally, the court concluded that, "given our holding that jailers are entitled to Eleventh Amendment immunity for official capacity claims, we find no reasonable basis for distinguishing claims against the jailers from claims against the sheriff. . . . We believe that the Alabama Supreme Court would accord the same treatment to [the plaintiff's claims] . . . against the jailers that it has given claims against sheriffs and deputy sheriffs." Id. at 1431.

The Lancaster court performed the sovereign immunity analysis within the context of a suit for negligence and wantonness in the performance of official duties. Id. at 1430-1431. Even after making the determination that, for purposes of sovereign immunity, claims against jailers were indistinguishable from claims against sheriffs, in granting the defendant jailers sovereign immunity for individual capacity claims, the court indulged in a bit of analysis to determine whether the suit was one, in effect, "against the state." Id. The court relied, in large part, upon Alabama cases that held specifically that suits for the negligent performance of duties should be

---

[5] To make this determination, the Eleventh Circuit used the same factors that it used in Carr to hold that deputy sheriffs were entitled to Eleventh Amendment immunity: (1) the relationship between sheriffs and the jailers; (2) the controls that the county exercises over sheriffs and jailers; and (3) whether an award of damages against the deputies in their official capacities would be paid with state funds. Lancaster, 116 F.3d at 1429-1430; Carr, 916 F.2d at 1525-1526. The court found that each of these factors pointed to the extension of Eleventh Amendment immunity to jailers, at the very least, in their official capacities. Id. at 1430.

treated as suits against the state.  Id. at 1431 (citing Alexander, 652 So. 2d at 1144; Parker, 519 So. 2d at 442-443; Oliver v. Townsend, 534 So. 2d 1038, 1044 (Ala. 1988)).  However, considering the deluge of Alabama case law that clearly holds that a state law suit against a sheriff, for acts committed in the scope of his duties that fall outside the Karrick and Alexander exceptions, is to be treated as a suit against the state, once jailers are found to possess a sheriff's sovereign immunity status, the analysis need not be quite so detailed.  If the plaintiff's state law claims against defendant sheriff Holcomb are barred by sovereign immunity, in light of the Eleventh Circuit's construction of Alabama law, the state claims against the jailer defendants should be barred as well.

## CONCLUSION

The court concludes that all the state law claims are barred.[6]  The court concludes that, at this stage, the defendants' motion as to the federal law claims should be denied.

This  28  day of February, 2001,


ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

_____

[6] It is not clear to the court why a plaintiff with federal claims requiring substantially the same evidence would even want to pursue the state law claims.

22