UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MELANIE M. CRIPPEN, etc., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CV-00-PT-3366-M |
| ) | |
| M.E. "Mac" HOLCOMB, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ENTERED**
JUN 14 2001

### MEMORANDUM OPINION

This cause comes to be heard upon defendants Southern Health Partners, Inc. and Patricia Short's ("defendants") Motion to Dismiss, filed on April 23, 2001.

### THE COMPLAINT

The complaint in this case purports to state various causes of action under federal and Alabama law based upon events in relation to the plaintiff's decedent's incarceration at the Marshall County Jail. In a Memorandum Opinion dated March 1, 2001, issued in response to a Motion to Dismiss filed by the law enforcement defendants, this court summarized the pertinent facts in this case. The court incorporates that summary into this opinion.

After this court issued the March 1 memorandum opinion, it granted the plaintiff's motion to file an amended complaint, naming the defendants Short and Southern Health Partners as additional defendants. Specifically, the complaint alleges that defendant Short "was at all relevant times a registered nurse employed by defendant Southern [Health Partners] whose responsibilities included the provision of medical care to the prisoners at the Marshall County

1

36

Jail," and that, while acting within the scope of her employment, she "failed to properly monitor the medical condition of John Crippen and . . . failed to provide the reasonable and necessary nursing services as dictated by the acceptable level of standards of care for registered nurses." Complaint, para. 24. The complaint also claims that defendant Southern Health Partners "was at all relevant times, the entity hired to assist with the provision of medical care to the prisoners at the Marshall County Jail," and that "by and through its agents and employees, failed to provide John Crippen with the reasonable and necessary medical and nursing services as dictated by the acceptable level of standards of care for similarly situated healthcare providers/professionals." Complaint, para. 23. The complaint does not purport to state federal claims against these two defendants, but, instead, brings claims against them solely under Alabama medical malpractice law.

## ARGUMENT

The defendants argue that the counts brought against them in the plaintiff's complaint should be dismissed, first, because the complaint fails to state a claim upon which relief can be granted.[1] Their main argument in favor of dismissal, however, is that the plaintiff's medical malpractice claims raise novel and complex issues of state medical provider liability law. Medical malpractice liability claims are governed completely by the Alabama Medical Liability Act, Code of Alabama § 6-5-481, *et. seq.* (1975)("AMLA") and the Alabama Medical Liability Act of 1987, Code of Alabama § 6-5-541, *et. seq.* (1975)("AMLA 1987"). The defendants describe these acts as "a comprehensive and complex statutory scheme containing discovery, evidentiary and damage procedures and issues which are unique to Alabama medical provider

---

[1] Because the defendants fail to elaborate further upon this purported reason for dismissal with any reasons or argument, either factual or legal, this court will follow their example.

2

liability law and are a strong expression by the Alabama Legislature of the public policy of Alabama in actions involving medical providers." They note that these statutes apply only to the plaintiff's claims against them, and not to claims against any other defendant in this case.

The defendants argue that the plaintiff's AMLA and AMLA 1987 claims against them raise novel and complex issues of state law for several reasons. First, they assert, application of the AMLA statutes would subject them to "wholly different legal standards and wholly different legal issues" than would be applied against the other defendants. They note that the elements necessary to prove liability with regard to the defendant correctional officers, specifically deliberate indifference and excessive force, are different from those used to prove liability under the AMLA. According to the defendants, the medical malpractice standard of the AMLA requires the plaintiff to prove that the medical provider "failed to exercise such reasonable care, skill and diligence as other similarly situated health providers in the same line of practice ordinarily have and exercise in a like case." § 6-5-548(a). Issues of fact are to be proven by "substantial evidence," a term of art in the AMLA, found at § 6-5-549. They claim that, in order to support this kind of claim, the plaintiff will have to rely upon the testimony of experts, the qualifications for which are heavily regulated by the AMLA.

The defendants next assert that many of the kinds of evidence that would be admissible in the federal suit against the correctional officers will not be admissible to prove the plaintiff's AMLA claim. They cite, as examples, certain absolute privilege rules found in § 22-21-8, which prohibits certain testimony regarding accreditation and quality assurance, and restricts possible witnesses to those not involved in accreditation and quality assurance procedures. Another example that the defendants provide is found at § 6-5-333(d), which excludes from permissible discovery peer review information, reports, interviews, or other documents furnished to peer

3

review committees. Section 6-5-545 abolishes the collateral source rule, allowing the admission of evidence that the plaintiff's medical or hospital expenses would be paid or reimbursed by another source. The defendants argue that these are just a few examples of the way that the AMLA's procedural rules conflict with the privileges and scope of discovery available under the more liberal Federal Rules of Evidence and Federal Rules of Civil Procedure.

The defendants' final argument in favor of this court's declining to exercise jurisdiction is that the differing standards of proof and differing analytical frameworks would likely confuse a jury. They cite to Padilla v. City of Saginaw, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994), in which the district court stated that a concern over jury confusion has, in the past, led to the Supreme Court's declining to exercise supplemental jurisdiction in cases in which part of the claims were brought under section 1983. (citing Moor v. County of Alameda, 411 U.S. 693, 716-717 (1973)). The defendants argue that the plaintiff will not be prejudiced by the dismissal, without prejudice, of her claims, because she has more than enough time to refile the action in state court.

The plaintiff argues that this court has the jurisdiction to hear their state law claims pursuant to 28 U.S.C. § 1367(a). She contends that, because her state claims arise from the same nucleus of operative fact from which the federal claims arise, supplemental jurisdiction is mandatory unless a specific statutory exception exists. The plaintiff asserts that the instant case falls into neither the "novel or complex issue of state law" category, found at § 1367(a)(1), nor any other category listed in § 1367(a)(2)-(4). She cites to Palmer v. Hospital Authority, 22 F.3d 1559, 1569 (11th Cir. 1994) for the proposition that this court *must* exercise supplemental jurisdiction if it does not find that a novel or complex issue of state law exists.

The plaintiff claims that, contrary to the defendants' assertions, AMLA claims often are

4

raised alongside section 1983 claims. She points to cases in which federal courts have retained supplemental jurisdiction over both state and federal causes of action, citing <u>Vista McDuffie v. Hopper</u>, 982 F. Supp. 817 (M.D. Ala. 1997) and <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700, 706 (11th Cir. 1985). She also argues that the interests of judicial economy, convenience, and fairness to the parties would be furthered by this court's retaining the AMLA claims. The plaintiff disputes the defendants' assertion that the witnesses and evidence necessary to sustain an AMLA claim would be materially different from evidence to be presented in a section 1983 claim. She maintains that both causes of action involve the same facts, occurrences, witnesses, and evidence.

The plaintiff further argues that dismissing the AMLA claims, even without prejudice, will prejudice her and would unduly burden witnesses. She contends that she would be prejudiced from such a dismissal because of the greater financial burden of re-filing in state court and taking duplicative depositions, and because of the emotional strain of simultaneously pressing two separate actions related to her husband's death. She also asserts that dismissal would place an undue burden on many witnesses because it would require them to testify to the same facts in two different venues.

## ANALYSIS

This court has supplemental jurisdiction over the plaintiff's AMLA claims pursuant to 28 U.S.C. § 1367(a). Pursuant to § 1367(c)(1), if the court finds that the state claims present a novel or complex issue of state law, it may, in its discretion, decline to exercise supplemental jurisdiction over the state claims. Upon appeal, a decision to dismiss the state law claims will be reviewed for abuse of discretion. <u>Milan Express, Inc. v. Averitt Express, Inc.</u>, 208 F.3d 975, 981 n. 3 (11th Cir. 2000). Whether a plaintiff's state claim presents a novel or complex issue of state

5

law is to be determined through a case-specific analysis. Eubanks v. Gerwin, 40 F.3d 157, 1161 (11th Cir. 1994). However, this court is guided by both the parties' arguments and Eleventh Circuit case law.

The defendants argue that the AMLA claims present a novel and complex issue of state law because the AMLA's unique procedural requirements would place a heavy burden on this court in presiding over the simultaneous litigation of the AMLA claims and those governed by the Federal Rules. The defendants also argue that, because its legal standards and specialized testimony differ from that associated with the federal claims, the plaintiff's AMLA claims would likely confuse a jury. While the procedural administration of the AMLA claims alongside the federal claims may be complicated, in light of case law to be discussed, *infra*, this court doubts that procedural complexity, in isolation, presents a "complex issue of state law," as it is used in those cases. Confusing the jury with divergent legal theories is a more weighty concern in this case.

In Brown v. Knox, 547 F.2d 900, 903 (5th Cir. 1977), the former Fifth Circuit found that the plaintiff's state claims, which were "traditional tort actions," were not particularly complex. In making that determination, the circuit court articulated certain qualities of overly complex state issues: (1) The law was such that the parties should have a "surer-footed" interpretation of it from the state court; (2) The proof to be offered at trial would be "substantially devoted to the unique elements of the state . . . actions;" and (3) The "issues and remedies involved in these actions will substantially predominate the litigation."[2] Id. If these concerns regarding the state

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit, including Unit A, handed down on or before September 30, 1981.

law to be applied did not exist, in the absence of other factors weighing against exercising jurisdiction over the state claims, "principles of judicial economy, convenience, and fairness to litigants dictate the assumption of jurisdiction over the state claims." Id.

Most of the cases in which the Eleventh Circuit has concluded that the district court did not abuse its discretion by finding that a particular state law was either too novel or too complex to be applied, arose in the context of either laws for which the state courts had not provided enough precedential guidance, or situations that would require the district courts to interpret the state constitutions in an issue of first impression. In Grant v. County of Seminole, 817 F.2d 731, 732 (11th Cir. 1987), the Eleventh Circuit upheld the district court's dismissal of a pendant state law claim that would have required the district court to decide whether a particular state law preempted a county ordinance. The circuit court found that the district court properly declined to decide the issue, which "would have required the district court to decide a novel question of state law that was by no means clear cut. Such 'needless decisions of state law' are to be avoided." Id. (quoting Moor v. County of Alameda, 411 U.S. 693, 715-717 (1973); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). In Moor, the Supreme Court held that the district court had properly declined to hear state law claims against the County of Alameda in the context of a Civil Rights Act claim against county law enforcement officials because such claims would require it "to resolve difficult questions of [state] law upon which state court decisions are not legion." 411 U.S. at 716. The Court also agreed with the district court's finding, that "with the introduction of a claim against the County under the California Tort Claims Act, with the special defenses available to the County, the case, which will be tried to a jury, could become unduly complicated . . . . [T]he unsettled nature of the law and the likelihood of jury confusion were entirely appropriate factors for the District Court to consider." Id. In L.A. Draper & Son v.

7

Wheelabrator-Frye, Inc., 735 F.2d 414, 429 (11th Cir. 1984), the Eleventh Circuit affirmed the district court's refusal to hear the plaintiff's state law unfair competition claim, finding that "The claim, as alleged in the complaint, has never been recognized by the Alabama courts. A preliminary search for Alabama authority has revealed a single case on the general issue, with facts quite dissimilar from the facts here. . . . It is most improper for a federal court, without suitable law to guide it, to plow new ground in a state law field." The circuit court, highlighting the fact that if the state claims were dismissed, "the same witnesses would have to introduce virtually identical testimony in a duplicative state proceeding," noted that judicial economy was still a factor in the analysis. Id. (citing Philips v. Smalley Maintenance Servs., 711 F.2d 1524, 1531 (11th Cir. 1983)(affirming district court's decision to exercise pendent jurisdiction over state claims in order to avoid dual proceedings in federal and state court and the need for witnesses to testify twice to the same facts)). However, it found that, in this particular instance, the district court did not abuse its discretion in concluding that the absence of clear direction or interpretation from the state courts outweighed the judicial economy interest. Id. Finally, in Chandler v. Miller, 73 F.3d 1543, 1546 n. 3 (11th Cir. 1996), the Eleventh Circuit upheld the district court's refusal to decide a state law claim that would require it to interpret the Georgia Constitution in an issue of first impression, finding that the claim presented "complex state constitutional issues."

    Applying the preceding cases to the instant case, this court finds that the relevant factors direct this court to accept jurisdiction of the plaintiff's AMLA claims. In the foregoing cases, the courts did not examine the complexity of the procedural issues that would result from the courts' accepting jurisdiction of the state claims. Therefore, this court will not assign much weight to the defendant's procedural burden argument. The claims held to be complex in

the foregoing cases either were substantively complex and were illuminated by little, if any, by prior state law interpretation, or involved the federal court's intrusion into state constitutional matters. While the statutory scheme in this instance may be substantively complex with its divergent standards and burdens of proof, it does not suffer from a dearth of interpretation and application. Currently, over one hundred Alabama cases discuss the AMLA.

A more weighty factor, perhaps, is the aforementioned divergent standards and burdens of proof. Avoiding jury confusion has been treated as an important objective by the courts. The Supreme Court in <u>Moor</u> noted that the state law claim against the county under the California Tort Claims Act and its special defenses could unduly complicate the Civil Rights Act case and confuse the jury. However, the Court also described the state law as "unsettled." <u>Id.</u> 411 U.S. at 716. In <u>Wu v. Thomas</u>, 847 F.2d 1480, 1486 (11th Cir. 1988), the Eleventh Circuit held that the district court did not abuse its discretion when it dismissed the plaintiff's state law breach of contract, fraud, and Alabama constitutional claims from the bundle of federal employment discrimination and Equal Pay Act claims because "additional legal theories would increase the likelihood of jury confusion . . . ." However, the district court also found that dismissing the state law claim would promote judicial economy and fairness to the parties. <u>Id.</u>

In the instant case, the plaintiff seeks to insert her state claims against only defendants Short and Southern Health Partners, not against the correctional officer defendants. She does not seek to bring federal claims against Short and Southern Health Partners. Alabama Medical Liability Act theories of liability will be introduced alongside the federal theories. The federal theories of deliberate indifference and excessive force, themselves, are not easy to grapple with. The state law claims may cause the entire consideration to be more difficult, not only because they increase the number of theories of recovery, but also because they require the jury to weigh

9

the evidence under a different standard, and apply a different burden of proof. Nevertheless, the fact that the federal standards used for deliberate indifference and excessive force will be applied to one set of defendants, while the AMLA standards will be applied to a completely different set, may cure the possibility of confusion somewhat.

      The parties dispute whether the interests of judicial economy and fairness to the parties would be better served by dismissing the plaintiff's AMLA claims. The defendants argue that, at the very least, judicial resources will not be unduly taxed because the witnesses for the AMLA claims would not be the same as the witnesses for the deliberate indifference and excessive force claims. The defendants claim that the witnesses to be used in the AMLA claims will be called upon to testify very narrowly to whether defendant South's actions met a certain standard of care. They argue that these witnesses are very specialized and will not be necessary for the federal claims. That the plaintiff would not need to use these kinds of witnesses in the federal proceeding tends to decrease the likelihood of duplicative testimony. The plaintiff, on the other hand, argues that all witness will be needed for both state and federal causes of action, and that by dismissing the state claims, this court will force the majority of witnesses to testify to the same facts in two different fora. However, even if the interests of judicial economy and witness convenience will not be served by dismissal, these interests have been assigned a lower priority when other concerns indicate that dismissal is nevertheless proper. See L.A. Draper, 735 F.2d at 429. In the instant case, it would seem that the question for this court is whether the complexity of the AMLA claims and their unique standards and burdens of proof create such a likelihood of jury confusion that it outweighs interests in judicial economy that may point to the exercise of federal jurisdiction.

      Having considered all the circumstances, the court concludes that it should not grant the

subject motion at this stage. Separate trials could result in what one of the attorneys referred to as the "empty chain" defenses. As the case progresses further, reasons for dismissal or severance may develop.

This 13th day of June 2001,

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE